UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at ASHLAND**

GREGORY HAY,                          )
                                      )
        Plaintiff,                    )
                                      )          Civil Case No.
v.                                    )          0:13-cv-149-JMH
                                      )
CAROLYN W. COLVIN, ACTING             )          **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL                )             **AND ORDER**
SECURITY,                             )
                                      )
        Defendant.                    )

                        ***

    This matter is before the Court upon cross-motions for
Summary Judgment [D.E. 14, 15] on Plaintiff's appeal of the
Commissioner's denial of his Title II application for a period
of disability and disability insurance benefits.[1] [Tr. 13-22].
The Court, having reviewed the record and being otherwise
sufficiently advised, will grant Plaintiff's motion and deny
Defendant's motion.

**I. Overview of the Process and the Instant Matter**

    The Administrative Law Judge ("ALJ"), in determining
disability, conducts a five-step analysis:

    1.  An individual who is working and engaging in
    substantial gainful activity is not disabled,
    regardless of the claimant's medical condition.

---

[1]     These are not traditional Rule 56 motions for summary
judgment. Rather, it is a procedural device by which the parties
bring the administrative record before the Court.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 15]. Under step two, the ALJ found that Plaintiff's medically determinable

impairments of generalized anxiety disorder, major depressive disorder, and bipolar disorder were "severe" as defined by the agency's regulations. [Tr. 15]; 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ further found that Plaintiff's back pain and torn tendon in his left shoulder were "non-severe" impairments. [Tr. 15].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 15-17]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels. [Tr. 17]. The ALJ further found that Plaintiff had the following non-exertional limitations: Plaintiff can understand, remember, and carry out simple and detailed instructions; Plaintiff can only work in a low stress job with only occasional decision making required and only occasional changes in the work setting; Plaintiff can have no interaction with the public; and only occasionally interact with co-workers and supervisors. [Tr. 17].

The ALJ found that Plaintiff was unable to perform any of his past relevant work. [Tr. 20-21]. However, there were jobs in the national economy that Plaintiff could perform. [Tr. 21-22].

Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 22].

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. Factual and Procedural Background

Plaintiff was 52 years of age at the alleged disability onset date [Tr. 21] and has a high school education. [Tr. 32]. Plaintiff has past work experience as a union carpenter and automobile detailer. [Tr. 21]. Plaintiff filed a Title II application for a period of disability and disability insurance

benefits, alleging disability beginning on September 30, 2010. [Tr. 13]. The claims were denied initially and upon reconsideration. [Tr. 13]. Plaintiff requested a hearing with the ALJ, which took place July 19, 2012. [Tr. 13]. The ALJ issued an unfavorable decision denying disability insurance benefits on August 28, 2012. [Tr. 22].

According to Plaintiff, he cannot be around people, he cannot ride or drive long distances, and cannot deal with situations. [Tr. 148]. Plaintiff claims that he also cannot be in certain buildings. [Tr. 152]. Plaintiff sometimes forgets to do things and his comprehension is not good. [Tr. 152]. When Plaintiff is depressed he tends to sleep [Tr. 151] and when he has anxiety attacks at his home, he retreats upstairs. [Tr. 153]. Plaintiff treats his impairments with Prozac, Abilify, Lamictal, Depakote, and Ativan, as well as monthly counseling sessions. [Tr. 349].

Plaintiff first visited Regional Psychotherapy Services, Inc. for treatment of his mental health impairments. [Tr. 223-37]. Plaintiff's treatment with Regional Psychotherapy took place before Plaintiff alleges he became disabled. On March 19, 2008, Plaintiff was diagnosed with major depression, and anxiety disorder. [Tr. 235]. Plaintiff was also assessed with extreme impairment in job performance and marked impairment in physical health and financial situation. [Tr. 235]. Plaintiff continued

treatment with Regional Psychotherapy through December 2008, [Tr. 223], and appeared less anxious and less depressed when treatment stopped. [Tr. 223].

Plaintiff also treated with Dr. Sandeep Saroch at Unified Psychiatry. Plaintiff had his initial diagnostic interview on April 7, 2010. At this time, Plaintiff complained of depressed mood, weight loss, low energy, low concentration, anhedonia, increased sleep, psychomotor retardation, worthlessness, hopelessness, and suicidal thoughts. [Tr. 267]. Plaintiff also complained of agoraphobia, panic attacks, and social phobia. [Tr. 268]. Dr. Saroch diagnosed Plaintiff with bipolar disorder, depressed mood, and social phobia. [Tr. 270]. Dr. Saroch prescribed Plaintiff Prozac, Lamictal, [Tr. 262], Lunesta [Tr. 263], and Abilify. [Tr. 264]. Plaintiff continued his monthly counseling sessions with Dr. Saroch through July 2012. *See* [Tr. 381]. Throughout treatment, Dr. Saroch routinely adjusted Plaintiff's medication and Plaintiff reported improvement. *See, e.g.*, [Tr. 282].

Dr. Saroch completed a mental capacities assessment of Plaintiff on July 24, 2012. [Tr. 382-84]. Under occupational adjustments, Dr. Saroch opined that Plaintiff had a poor ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with work stress, function independently, maintain attention and concentration,

6

and persist at work-like tasks, and a fair ability to use judgment. [Tr. 382]. Under performance adjustments, Dr. Saroch opined that Plaintiff had a poor ability to understand, remember and carry out complex job instructions, understand, remember and carry out detailed, but not complex job instructions, and understand, remember and carry out simple job instructions. [Tr. 383]. Under personal-social adjustments, Dr. Saroch opined that Plaintiff had a poor ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability, and a fair ability to maintain personal appearance. [Tr. 383]. Dr. Saroch opined that all of Plaintiff's diagnoses and symptoms were "likely to affect future jobs." [Tr. 384].

Plaintiff was examined by Dr. Leigh Ann Ford for a consultative examination on February 28, 2012. [Tr. 349-55]. At the examination, Plaintiff reported that he was able to do household chores when he was alone, that he avoids leaving home because crowds make him nervous, and that he rarely visits with anyone. [Tr. 350]. Dr. Ford noted that Plaintiff's concentration and attention appeared to be affected by anxiety, that his memory capacities appeared normal, his mood appeared depressed and pessimistic, he had no suicidal thoughts on the day of examination, and that his coping skills appeared to be overwhelmed. [Tr. 350]. Dr. Ford also administered the Rey 15-Item Test, the Wechsler Abbreviated Scale of Intelligence

(WASI), Kaufmann Test of Educational Achievement, Second Edition Brief Form (KTEA II), the Beck Depression Inventory, Second Edition (BDI-II), and the Beck Anxiety Inventory (BAI). [Tr. 350].

The Rey 15-Item Test revealed no indication of faking bad or malingering tendencies. [Tr. 351]. On the WASI, Plaintiff was average on the vocabulary subtest, average on the block design subtest, average on the similarities subtest, and average on the matrix reasoning. Plaintiff's Full Scale IQ score was 100, which is also average. [Tr. 351]. On the KTEA-II, Plaintiff also scored in the average range. [Tr. 351]. The results of the BDI-II indicated that Plaintiff was suffering from severe levels of depression. [Tr. 351]. The results of the BAI indicated that Plaintiff was suffering from severe levels of anxiety. [Tr. 352]. Dr. Ford assessed Plaintiff with generalized anxiety disorder with panic attacks and depressive disorder. [Tr. 352]. Based on this testing, Dr. Ford opined that, while Plaintiff could possibly attain employment, it would be unlikely that he could sustain full time employment. [Tr. 352].

Dr. Ford also completed a medical assessment of Plaintiff's ability to perform work-related activities. Under occupational adjustments, Dr. Ford opined that Plaintiff had a fair ability to follow work rules, use judgment, interact with supervisors, and function independently, and had a poor ability to relate to

co-workers, deal with the public, deal with work stress, and maintain attention/concentration. [Tr. 353]. Under performance adjustments, Dr. Ford opined that Plaintiff had a good ability to understand, remember, and carry out detailed, but not complex job instructions and to understand, remember, and carry out simple job instructions. [Tr. 354]. Further, Dr. Ford opined that Plaintiff had a fair ability to understand, remember, and carry out complex job instructions. [Tr. 354]. Finally, Dr. Ford opined, under personal-social adjustments, that Plaintiff had a fair ability to maintain personal appearance and behave in an emotionally stable manner, and a poor ability to relate predictably in social situations and demonstrate reliability. [Tr. 354].

Vocational expert Mr. Anthony Michael testified at the hearing before the ALJ. [Tr. 44-47]. Mr. Michael testified that a person with an RFC equivalent to the ALJ's finding for Plaintiff would not be able to return to Plaintiff's past relevant work. [Tr. 45]. However, Mr. Michael found that there would be jobs in the national economy that someone with Plaintiff's RFC could perform. [Tr. 45]. Mr. Michael found that a hypothetical person could perform no jobs in the national economy if the same hypothetical person also had a poor ability to relate to co-workers, to deal with the public, to deal with work stress, to maintain attention and concentration, to relate

predictably in social situations, and to demonstrate reliability. [Tr. 46].

Plaintiff claims that on a normal day he showers, takes his medication, sometimes does laundry and dishes, watches television, naps, and may help take care of his daughter. [Tr. 147]. Plaintiff is able to take care of all of his personal grooming and hygiene. [Tr. 148]. Plaintiff is able to cook, [Tr. 149], and drive [Tr. 150]. Plaintiff claims that he does not participate in any social activities, goes to his mother's home once a day, and visits the doctor once a month. [Tr. 151].

## IV. Analysis

Plaintiff claims there are four issues, but Plaintiff appears to make six different arguments within those four issues. Plaintiff argues: (1) that the ALJ improperly relied on medical evidence of treatment records prior to Plaintiff's alleged disability onset date; (2) that the ALJ gave inappropriate weight to the function report completed by Plaintiff's wife; (3) that the ALJ failed to properly apply the treating physician rule; (4) that the ALJ improperly gave little weight to the opinion of examining physician, Dr. Ford; (5) that the ALJ improperly gave weight to the opinion of a non-examining physician; and (6) that the ALJ erred by not ordering an additional consultative examination.

Defendant responds first by arguing that the ALJ's opinion reflects a thorough review of Plaintiff's medical treatment, including medical evidence before and after his alleged onset date of disability. Second, Defendant argues that the RFC finding was not solely based upon the RFC assessment performed by Plaintiff's wife, but was based upon the entire record. Third, Defendant argues that the ALJ properly applied the treating physician rule because he stated good reasons for not giving great weight to the opinion of the treating physician. Next, Defendant argues that the ALJ properly failed to give weight to the opinion of the examining physician because her opinion was not supported by the medical evidence of record. Finally, Defendant argues that the ALJ did not err by failing to order a consultative examination because it is the burden of Plaintiff to produce the medical evidence necessary to support his claim of disability. Each of these issues will be discussed in turn.

**I. The Court does not express an opinion on whether the ALJ erred by relying on medical evidence prior to the alleged onset of disability.**

Plaintiff argues that the ALJ erred by referring and relying upon medical treatment records prior to Plaintiff's alleged onset of disability. The Court cannot find that the ALJ solely relied upon the treatment records from years prior to Plaintiff's alleged date of disability. The ALJ did recount

medical evidence provided from as early as 2008. However, based
upon the ALJ's opinion, it is unclear whether the ALJ used this
medical evidence as a comparison to medical evidence of
Plaintiff's impairments after the alleged onset date or if
Plaintiff relied upon the earlier medical evidence to assess
Plaintiff's RFC. As Plaintiff was working and does not allege
that he was disabled when seeking treatment in 2008, it may be
permissible for the ALJ to use the prior medical records to show
that Plaintiff's condition had changed or had not changed.
However, it would be inappropriate for the ALJ to complete a
current RFC based upon medical treatment at a time when
Plaintiff admits he was not disabled. Because the Court cannot
determine if the ALJ relied upon this medical evidence as a
current assessment of Plaintiff's abilities, and because the
Court will remand for different reasons, the Court expresses no
opinion on whether the ALJ erred in this regard.

**II. The ALJ did not give inappropriate weight to the
function report completed by Plaintiff's wife.**

Plaintiff argues that the ALJ erred by relying solely on
the function report submitted by Plaintiff's wife, a non-
acceptable medical source, in determining Plaintiff's RFC.

Information from [a spouse] cannot establish the
existence of a medically determinable impairment.
Instead, there must be evidence from an 'acceptable
medical source' for this purpose. However, information
from [a spouse] . . . may provide insight into the

severity of the impairment(s) and how it affects the
individual's ability to function.

SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Contrary to Plaintiff's allegations, the ALJ did not solely
rely on the function report of Plaintiff's wife to determine
Plaintiff's RFC. In his discussion of Plaintiff's RFC, the ALJ
went through a detailed account of medical evidence, the
function report of Plaintiff's wife, and the subjective
complaints of Plaintiff. [Tr. 17-20]. Thus, the ALJ, in
compliance with the regulations, relied upon the function report
of Plaintiff's wife to "show the severity of [his] impairment(s)
and how it affects [his] ability to work." 20 C.F.R. §
404.1513(d). This finding is bolstered by the fact that the ALJ
did not cite the third-party function report during a discussion
of Plaintiff's impairments, but rather for symptoms of
Plaintiff's impairments, which impact his ability to work. For
example, the ALJ noted that the function report stated Plaintiff
would frequently stay home, that he had trouble sleeping, and
that he had trouble with his memory. [Tr. 19]. The ALJ did not
err by considering the function report submitted by Plaintiff's
wife because it is an opinion of an "other source" that the ALJ
may properly consider.

**III. The ALJ failed to properly apply the treating physician rule.**

Plaintiff argues that the ALJ failed to give good reasons for giving little weight to the opinion of treating physician, Dr. Sandeep Saroch. Plaintiff's argument is two-fold. First, Plaintiff argues that the ALJ failed to give adequate weight to Dr. Saroch as Plaintiff's treating physician. Second, Plaintiff argues that the ALJ erred by failing to give adequate weight to the opinion of Dr. Saroch because Dr. Saroch is a mental health specialist.

> [A]n opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a nonexamining source), and an opinion from a medical source who regularly treats the claimant (a treating source) is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a nontreating source).

*Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citations omitted). The Social Security Administration "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not

inconsistent with the other substantial evidence in the case record.'" *Id.* at 376 (quoting 20 C.F.R. § 404.1527(c)(2)).

"The Commissioner is required to provide 'good reasons' for discounting the weight to a treating-source opinion." *Id.* at 376 (citing 20 C.F.R. § 404.1527(c)(2)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). "[The Court] will reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician." *Friend v. Comm'r of Soc. Sec.*, 374 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-46 (6th Cir. 2004)).

Dr. Saroch opined that Plaintiff exhibited a poor ability to function in almost every category on the mental capacities assessment. [Tr. 382-84]. When assessing Plaintiff's ability to work, Dr. Saroch stated:

> Patient has been diagnosed with Bipolar Disorder, most recent episode mixed, moderate and Social Phobia. Symptoms include but are not limited to: depressed mood, low energy, low concentration and attention, anhedonia, psychomotor retardation, feelings of

worthlessness/hopelessness, euphoric mood, irritability, racing thoughts, distractibility, pressured speech, psychomotor agitation, anxiety attacks alone and in crowds, anticipatory anxiety and phobic avoidance. Patient experiences poor memory, forgetfulness, inability to persist at tasks, lack of frustration tolerance and inability to handle stressful situations. He also has a high harm avoidance and low persistence along with poor self directiveness and self transcendence, all of which are likely to affect future jobs. Patient has experienced symptoms since his teenage years.

[Tr. 384].

The ALJ provided good reasons for giving little weight to the opinion of Dr. Saroch. The ALJ provided that there was a lack of objective findings to support the limitations imposed by Dr. Saroch, the opinion does not relate to specific findings, the opinion is not supported by reports which indicate only outpatient care, the opinion was vague, and the opinion is inconsistent with Plaintiff's self-reported activities. [Tr. 20].

These reasons, however, were not supported by the evidence in the case record. The ALJ's finding that Dr. Saroch's opinion was not supported by objective findings is not supported by the evidence of record. Prior to Plaintiff's alleged disability onset date, Plaintiff was diagnosed with major depression and anxiety disorder at Regional Psychotherapy. [Tr. 235]. An extreme impairment in job performance and a marked impairment in physical health and financial situation were also noted. [Tr.

16

235]. Plaintiff treated with Regional Psychotherapy until December 2008 for depression and anxiety disorder. Plaintiff continued his treatment with Dr. Saroch, who assessed Plaintiff with bipolar disorder and depressed mood, as well as social phobia. [Tr. 270].

Dr. Laura Ford administered the BDI-II and BAI, which are used to measure symptoms of depression and anxiety. [Tr. 351-52]. This testing revealed that Plaintiff was experiencing severe levels of depression and anxiety. [Tr. 351-52]. Furthermore, the Rey 15-Item Test, administered by Dr. Ford, revealed no indication of faking bad or malingering tendencies. [Tr. 351]. Therefore, there were findings by medical professionals and objective medical testing, in addition to Plaintiff's subjective complaints, to support the limitations imposed by Dr. Saroch.

The ALJ's statement that the opinion did not relate to specific findings was not supported by the evidence. The mental capacities assessment completed by Dr. Saroch specifically states the findings that support his opinion. For example, under the occupational adjustments category, when asked to describe any limitations and include the medical clinical findings that support this assessment, Dr. Saroch stated "Patient experiences low concentration, low attention, low energy, depressed mood, irritability, anxiety symptoms." [Tr. 382]. Dr. Saroch included

similar findings justifying all of the limitations he opined affected Plaintiff. Therefore, the ALJ's statement that Dr. Saroch's opinion was not related to specific findings is not supported by the evidence.

The ALJ found that Dr. Saroch's opinion was vague because "the word 'poor' fails to express the claimant's functioning in terms of specific occupational limitations." [Tr. 20]. This reason is not supported by substantial evidence. The mental capacities assessment defines the word "poor" as "ability to function in this area is seriously limited, but not precluded." [Tr. 382]. Thus, for example, when checking poor under Plaintiff's ability to follow work rules, Dr. Saroch was indicating that Plaintiff's ability to follow work rules was seriously limited, but not precluded. Therefore, the ALJ's "good reason" that Dr. Saroch's opinion was vague is not supported by the medical evidence.

The ALJ's statement that Dr. Saroch's findings are inconsistent with Plaintiff's self-reported activities is not supported by substantial evidence. Plaintiff states that his memory is really bad [Tr. 149], that he does not like to go out in public [Tr. 151], being around people makes him nervous [Tr. 152], he is claustrophobic [Tr. 152], he cannot be in certain buildings [Tr. 152], his comprehension is not good [Tr. 152], that he gets stressed at home and has to retreat upstairs [Tr.

153], and he has fears of people staring at him [Tr. 153]. These statements by Plaintiff fully support Dr. Saroch's findings and limitations.

The ALJ's statement about Plaintiff's subjective complaints, and, to a degree, his ultimate finding of not disabled, appears to hinge on Plaintiff's self-reported ability to perform daily household functions. In other words, the ALJ's decision appears to find that because Plaintiff can perform *physical* activities he is not disabled due to *mental* impairments. Plaintiff does not allege that he cannot sit, stand, lift, push, or pull, the factors typically evaluated in an application for disability benefits due to a physical impairment, because Plaintiff is not alleging that he is physically incapable of performing physical activities. Plaintiff's physical ability to mow the grass or wash dishes at home without tremendous effort or pain is not indicative of his ability to cope with a work environment that may include co-workers, supervisors, small spaces, stressors, and instructions. Therefore, the ALJ's reasons for affording little weight to the opinion of Dr. Saroch are not supported by the evidence in the case record and the ALJ failed to properly apply the treating physician rule.

**IV. The ALJ gave improper weight to examining physician, Dr. Leigh Ann Ford.**

Plaintiff argues that the ALJ erred in not relying on the opinion from examining physician, Dr. Leigh Ann Ford. "Though the opinions of examining physicians are not entitled to as great a weight as those of treating physicians, the ALJ must, nonetheless, explain the weight given to opinions of examining sources." *Wilburn v. Astrue*, No. 3:10-cv-8, 2010 WL 6052397, at *6 (E.D. Tenn. Sept. 13, 2010) (citing 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii)). "The same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining weight to be given an examining physician's views." *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 710 (6th Cir. 2002).

The ALJ provided numerous reasons to give little weight to the opinion of Dr. Ford. The ALJ stated that Dr. Ford's opinion was based upon Plaintiff's subjective complaints and is inconsistent with the overall medical record. [Tr. 20]. The ALJ also stated that the medical opinion was vague because it fails to adequately define the term "poor." [Tr. 20].

The ALJ's statement that Dr. Ford's opinion was based on Plaintiff's subjective complaints is not supported by the evidence in the record. While Dr. Ford's report reveals that she asked Plaintiff to describe his complaints, the report also

shows that a mental status examination was performed, as were numerous objective medical tests. [Tr. 349-50]. Dr. Ford administered the Rey 15-Item Test, the WASI, the KTEA II, the BDI-II, and the BAI. [Tr. 350]. Therefore, while it may have been partially based on Plaintiff's subjective complaints, Dr. Ford's opinion was based on the results of objective testing.

Additionally, Dr. Ford's findings are not inconsistent with the medical evidence. The only evidence in the record after Plaintiff's alleged onset date is from Dr. Saroch and Dr. Ford. A non-examining state agency physician did review Plaintiff's medical treatment, but, as is discussed below, the ALJ did not discuss this report, much less give it weight, and, as Plaintiff points out, the non-examining state agency physician did not review the complete medical record. Dr. Ford's opinions on Plaintiff's work limitations are mostly supported by the treatment from Dr. Saroch, the only additional medical records available. Furthermore, while not the Court is aware the ultimate finding of disability is reserved to the Commissioner, Dr. Saroch and Dr. Ford agree that Plaintiff's impairments and limitations impact his ability to work.

The ALJ's statement that the term "poor" is vague is not supported by the evidence. At the top of the medical assessment sheet, the term "poor" is defined as "ability to function in this area is seriously limited but not precluded." [Tr. 353].

Therefore, the term is not vague as it is clearly defined and indicates that, for the corresponding function, Plaintiff was seriously limited.

The ALJ erred in his analysis of the examining physician's opinion. While the examining physician is not entitled to great weight, as is a treating physician, the ALJ is still required to explain the weight given to the examining physician. The ALJ's reasons given for providing little weight to the opinion of the examining physician are completely unsupported by the record. Thus, the ALJ erred in providing little weight to the opinion of examining physician, Dr. Ford.

### V. The ALJ did not improperly give weight to a non-examining physician.

Plaintiff argues that the opinion of state agency non-examining physician, Dr. Alicia Maki, is not supported by substantial evidence. All evidence from nonexamining sources is opinion evidence. 20 C.F.R. § 416.927(e). "The opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and

psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at *3.

While Plaintiff argues that the opinion of Dr. Maki is not based upon the substantial medical evidence, the Court cannot find any reference to Dr. Maki's opinion within the ALJ's decision. Thus, the ALJ did not give weight to the opinion of Dr. Maki and the ALJ committed no error in this regard.

**VI. The ALJ did not err in failing to order Plaintiff to submit to an additional consultative examination.**

Plaintiff argues that, upon finding the opinions of the examining physicians were inconsistent, the ALJ should have ordered Plaintiff to undergo a consultative examination or contact the treating physician. "The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec. of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). An ALJ is not required to order a consultative examination "unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Id.* (alteration in original) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)).

The Court does not find that an additional consultative examination was necessary in this case. The ALJ was presented with evidence from Plaintiff's treating physician, an examining physician, and a non-examining physician. This medical evidence presented an adequate basis on which the ALJ could make the disability determination. Furthermore, Plaintiff argues that a consultative examination should have been ordered based on the fact that the ALJ discredited the opinions of both examining physicians because they were inconsistent. A similar argument has been dismissed by the Sixth Circuit. *See Eldridge v. Apfel*, 173 F.3d 854, No. 98-5427, 1999 WL 196564, at *3 (6th Cir. Mar. 30, 1999) (dismissing an argument that the ALJ was required to order a consultative examination after disregarding the report of a social worker); *see also Robinson v. Sullivan*, 887 F.2d 1087, No. 89-3110, 1989 WL 119382, at *1 (6th Cir. Oct. 12, 1989) ("While such an examination might have been helpful here, it was not *necessary*. . . ." (alteration in original)). Therefore, it was not error for the ALJ to fail to order an additional consultative examination.

## V. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 14] be, and the same hereby is, **GRANTED**;

(2) that the Commissioner's Motion for Summary Judgment [D.E. 15] be, and the same hereby is, **DENIED**.

This the 14th day of May, 2014.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge